UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRICIA RODMAN, MICHAEL RODMAN,

Plaintiffs,

v.

ETHICON, INC., JOHNSON & JOHNSON,

Defendants.

CASE NO. C20-6091 BHS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's motion for summary judgment. Dkt. 45. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On June 14, 2013, Plaintiffs Tricia and Michael Rodman filed suit against Defendants in the MDL *In re Ethicon, Inc. Products Liability Litigation*, MDL No. 2327, located in the Southern District of West Virginia. Dkt. 1. On August 13, 2019, Defendants moved for summary judgment. Dkt. 45. On August 27, 2019, Plaintiffs

responded. Dkt. 51. On September 4, 2019, Defendants replied. Dkt. 52. The Southern District of West Virginia did not resolve the motion prior to transfer. On October 13, 2020, the case was transferred to this Court. Dkt. 47. Consistent with the transfer letter, Defendants moved to renote their fully briefed motion for summary judgment, Dkt. 95, which the Court granted, Dkt. 97.

Presently before the Court is Defendants' motion for summary judgment, Dkt. 45, and the parties' notices of supplemental authority, Dkts. 95, 96.

## II. FACTUAL BACKGROUND

Plaintiffs bring claims against Defendants arising out of Mrs. Rodman's surgical implantation of TVT-O—a prolene mesh implant—to treat her stress urinary incontinence. Dkt. 1; Dkt. 45-1, Amended Plaintiff Fact Sheet ("PFS"), at 5. Dr. Mary Ludwiczak performed surgery on Mrs. Rodman to implant the TVT-O device on May 5, 2011 in Longview, Washington. PFS at 5. Mrs. Rodman states that she suffered from "mesh erosion that caused severe pain and required revision," including "pain during intercourse and pelvic pain." *Id.* at 6. After the revision surgery, she states that her pain and difficulty with sex continued, her incontinence returned, and she began experiencing difficulty with bowel movements. *Id.* In addition to her physical pain, she states that she has "suffered psychologically and emotionally[.]" *Id.* at 7.

Dr. Ludwiczak testified that she first received training from Ethicon regarding TVT-O mesh in 2004. Dkt 45-2, Deposition of Mary Ludwiczak, M.D., ("Ludwiczak Depo."), at 68:2–17. Dr. Ludwiczak further testified that she additionally read about the safety and potential risks of pelvic mesh products in medical journals and literature, that

she would discuss the safety and potential risks of a product with her colleagues, and that she usually relied on the American College of Obstetricians and Gynecologists ("ACOG") as her "gold standard." *Id.* at 32:8–33:6. Prior to Mrs. Rodman's surgery, Dr. Ludwiczak was aware that, in 2008, the FDA had issued a public health notification regarding the use of transvaginal mesh for the treatment of stress incontinence. *Id.* at 33:10–35:6). She additionally testified that, by May 2011, she was aware that acute and chronic pain with intercourse, vaginal scarring, infection, urinary problems, fistula formation, neuromuscular problems, recurrence, erosion, exposure, and extrusion were all risks associated with mesh surgery. *See id.* at 37:9–39:11.

The TVT-O product itself was accompanied by a package insert commonly referred to as "Instructions for Use" ("IFU"). Dr. Ludwiczak testified that she was sure that she read through the TVT products' IFU "at some point." *Id.* at 41:11–15. Specific to Mrs. Rodman's implant surgery, Dr. Ludwiczak stated that she was "not sure [she] would have read the package insert and then recommended it [i.e., the TVT-O] to her based on the package insert." *Id.* at 41:16–22. Furthermore, she testified that any warnings of additional risks would not have changed her decision to recommend the TVT-O procedure to Mrs. Rodman. *Id.* at 42:1–8. In sum, Dr. Ludwiczak stands by her decision to recommend the product to Mrs. Rodman. *Id.* at 42:15–17.

While Plaintiffs state that they dispute Defendants' characterization of the facts, they almost exclusively rely on their case specific expert's, Dr. Dionysios Veronikis, opinion to do so. *See* Dkt. 51 at 2–6. Dr. Veronikis opines that multiple, safer options for treating Mrs. Rodman's urinary incontinence were available and that Defendants

misrepresented and concealed the risks of the pelvic mesh devices. *See* Dkt 51-2 at 18–19.[1] Plaintiffs allege that Mrs. Rodman suffered severe injuries as a result of her TVT-O implant and Defendants' misrepresentation and concealment of the TVT-O's risks. Plaintiffs thus brings product liability, negligence, and fraud claims against Defendants for her injuries arising from the surgical implantation of the TVT-O.

## III. DISCUSSION

Defendants move for summary judgment on all of Plaintiffs' claims,[2] arguing that some of their claims are preempted by the Washington Products Liability Act ("WPLA"), RCW 7.72, *et seq.*, and that the non-preempted claims fail because there is insufficient evidence to establish causation.

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[1] Plaintiffs additionally cite to Exhibits 3 through 6 in support of their claim that Defendants misrepresented and concealed risks but with no specific citations. "It is the parties' responsibility to cite to the materials in the record they wish the Court to consider." *Graham-Sult v. Clainos*, No. C 10-4877 CW, 2016 WL 324347, at *2 (N.D. Cal. 2016) (citing *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988) ("The district court is not required to comb the record to find some reason to deny a motion for summary judgment.")).

[2] Plaintiffs concede to the dismissal of the following claims: Strict Liability – Manufacturing Defect (Count II), Strict Liability – Defective Product (Count IV), Breach of Express Warranty (Count XI), Breach of Implied Warranty (Count XII), Violation of Consumer Protection Laws (Count XIII), and Unjust Enrichment (Count XV). *See* Dkt. 51 at 1 nn.2–3. Summary judgment is GRANTED on the conceded claims, and the claims are dismissed with prejudice. Plaintiffs' remaining claims for the Court's consideration are: Negligence (Count I), Strict Liability – Failure to Warn (Count III), Strict Liability – Design Defect (Count V), Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), Gross Negligence (Count XIV), Loss of Consortium (Count XVI), Punitive Damages (Count XVII), and Discovery Rule and Tolling (Count XVIII).

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B. WPLA Preemption**

Defendants first argue that the WPLA preempts the majority of Plaintiffs' claims, specifically their claims for: Negligence (Count 1), Strict Liability – Failure to Warn (Count III), Strict Liability – Design Defect (Count V), Fraudulent Concealment (Count VII), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), and Gross Negligence (Count XIV). Dkt. 46 at 7. Plaintiffs assert that their claims are not preempted and oppose Defendants' motion as to their design defect, failure to warn, negligence, and fraud-based claims. Dkt. 51 at 8.

The WPLA "creates a single cause of action for product-related harms that supplants previously existing common law remedies." *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 860 (1989) (en banc). The WPLA's statutory cause of action preempts all product-related common-law claims based on any substantive legal theory except fraud, intentionally caused harm, or claims under Washington's Consumer Protection Act. RCW 7.72.010(4). The WPLA clearly contemplates negligence and negligent misrepresentation within its scope of preemption. *Id.* (a product liability claim includes, *inter alia*, any claim based on negligence or misrepresentation, whether negligent or innocent). Additionally, this Court has concluded that a claim for negligent infliction of emotional distress falls within the WPLA's scope of preemption. *March v. Ethicon, Inc.*, 2021 WL 719261, at *3 (W.D. Wash. Feb. 24, 2021) (distinguishing *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 561–62 (2013)). Plaintiffs' claims for

Negligence (Count 1), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), and Gross Negligence (Count XIV) clearly fall within the WPLA's preemptive scope. Summary judgment is therefore GRANTED, and the negligence-based claims are dismissed with prejudice.

Plaintiffs' claims for Strict Liability – Failure to Warn (Count III), Strict Liability –Design Defect (Count V), and Fraudulent Concealment (Count VII) are not preempted, however. The WPLA permits claims against a product manufacturer "if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). These claims are commonly known as design defect claims and failure to warn claims, respectively. *See Kirkland v. Emhart Glass S.A.*, 805 F. Supp. 2d 1072, 1076 (W.D. Wash. 2011). Plaintiffs' short form complaint asserts strict liability claims for failure to warn and design defect, and the short form complaint's simplified pleading does not preclude Plaintiffs from bringing these claims under the WPLA. And Plaintiffs are correct that the WPLA's scope of preemption excepts fraud. *See* RCW 7.762.010(4); *Bylsma*, 176 Wn.2d at 559 (collecting cases holding the same).

As these remaining claims are not preempted, the Court will now turn to the merits of Plaintiffs' WPLA and fraud-based claims.

### C. Product Liability Claims

#### 1. Strict Liability – Failure to Warn

The WPLA permits recovery "if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). To prevail on a failure to warn claim, a plaintiff must show that (1) the defendant failed to sufficiently warn, (2) the plaintiff suffered damages, and (3) the defendant's failure to sufficiently warn of the dangers was a proximate cause of the plaintiff's damages. *See, e.g.*, *Little v PPG Industries, Inc.*, 19 Wn. App. 812, 818 n.3 (1978) (approving the Restatement of Torts' recitation of the elements). However, in the context of medical failure to warn claims, the duty of the manufacturer to warn is satisfied if the manufacturer gives adequate warning to the physician who prescribes or implants the product. *Terhune v. A.H. Robins Co.*, 90 Wn.2d 9, 13 (1978).

Defendants argue that Plaintiffs' failure to warn claim fails because Mrs. Rodman's implanting physician—Dr. Ludwiczak—was aware of the specific risks and injuries Mrs. Rodman attributes to her mesh implant and because Dr. Ludwiczak did not rely on any materials provided by Defendants. Dkt. 46 at 10–12. In order to prove causation, Plaintiffs must show that Mrs. Rodman's implanting physician was aware of the alleged inadequate warning made by Defendants. *See Cutter v. Ethicon, Inc.*, No. 5:19-443-DCR, 2020 WL 109809, at *8 (E.D. Ky. Jan. 9. 2020) ("Dr. Guiler testified that he did not consult these materials to obtain information about the risks of implanting the Prolift device in Jenesta and, in fact, has never relied on them for such information.").

They must also show that her physician would have acted differently had he been given an adequate warning. *See Contreras v. Bos. Sci. Corp.*, No. 2:12-cv-03745, 2016 WL 1436682, at *4 (S.D.W. Va. Apr. 11, 2016) ("Here, the plaintiffs have not provided any citations to the record showing that Dr. Baker, the implanting physician, would have taken a different course of action even if she had been given an adequate warning."); *Fulgenzi v. PLIVA*, 140 F. Supp. 3d 637, 648 (N.D. Ohio 2015) ("The undisputed facts in the record establish that plaintiff's physicians did not ever read, let alone rely on, PLIVA's inadequate 2004 warning."); *Higgins v. Ethicon, Inc.*, No. 2:12-cv-01365, 2017 WL 2813144, at *3 (S.D.W. Va. Mar. 30, 2017) (granting summary judgment on a Texas law failure to warn claim because "[t]he plaintiffs have failed to present any testimonial or other evidence that Dr. Anhalt would not have used or prescribed the TVT-S to treat Ms. Higgins had he received a different warning.").

Plaintiffs argue that Defendants failed to provide adequate warnings of the risks associated with the TVT-O device to Dr. Ludwiczak. They assert that at the time of Mrs. Rodman's TVT-O implant surgery, Dr. Ludwiczak "had read the IFU in addition to relying on the training provided by Ethicon." Dkt. 51 at 10 (citing Ludwiczak Depo. at 32:8–16, 41:11–15, 71:18–21). It is true that Dr. Ludwiczak received training from Ethicon in 2004 and that she testified that she would have read through the IFU "at some point." *See* Ludwiczak Depo. at 68:2–17; 41:11–15. But Dr. Ludwiczak further testified that she was not sure that she would have read the IFU prior to Mrs. Rodman's surgery and then recommended the product to her. *Id.* at 41:16–22. Based on the evidence cited

by the parties, it is unclear whether Dr. Ludwiczak actually relied on Defendants' labeling or whether she relied on her own knowledge.

But Plaintiffs must also show to establish proximate cause that, if adequately warned of the risks, Dr. Ludwiczak "would have treated the product differently and avoided the harm." *Ayers By and Through Smith v. Johnson & Johnson Baby Products Co.*, 59 Wn. App. 287, 291 (1990). Plaintiffs cite Dr. Ludwiczak's deposition in which she testified that, if informed of different risks associated with the TVT-O, she would have informed Mrs. Rodman of those risks. *See* Dkt. 51 at 11. But, Dr. Ludwiczak testified that she stands by her decision to recommend the TVT-O device to Mrs. Rodman. Ludwiczak Depo. at 42:15–17. Plaintiffs mischaracterize Dr. Ludwiczak's testimony to be that "had she been adequately informed by Defendants, she likely would have altered the course of her decision to implant the TVT-O device in Ms. Rodman." Dkt. 51 at 11. The uncontroverted evidence is that Dr. Ludwiczak would have informed Mrs. Rodman of these additional risks, not that she "would have treated the product differently and avoided the harm." *Ayers*, 59 Wn. App. at 291.

Even assuming Defendants' warnings were inadequate, Plaintiffs have not established proximate cause because Dr. Ludwiczak testified that she would have still recommended the TVT-O if adequately warned of the risks. Summary judgment is therefore GRANTED as to Plaintiff's Strict Liability – Failure to Warn claim, and that claim is dismissed with prejudice.

**2. Strict Liability – Design Defect**

The WPLA also allows for recovery "if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed[.]" RCW 7.72.030(1). To prevail in a WPLA claim for design defect, a plaintiff must show that (1) a manufacturer's product (2) not reasonably safe as designed (3) caused harm to the plaintiff. *Pagnotta v. Beall Trailers of Or., Inc.*, 99 Wn. App. 28, 36 (2000). Defendants again argue that Plaintiffs cannot establish proximate causation.

Expert testimony is not always required to establish causation for a design defect claim, but "[e]xpert testimony is required to establish causation when an injury involves obscure medical factors that would require an ordinary lay person to speculate or conjecture in making a finding." *Bruns v. PACCAR, Inc.*, 77 Wn. App. 201, 214 (1995) (internal citations omitted). Such is the case here. Plaintiffs' "required expert testimony must provide proof that the defect 'more probably than not' caused [Mrs. Rodman's] injuries." *Id.* at 215.

Dr. Veronikis is Plaintiffs' sole expert and their case-specific expert. Defendants note, however, that Dr. Veronikis's expert report is unsworn. *See* Dkt 52 at 11 (citing Dkt. 51-2). Courts in this Circuit have routinely held that unsworn expert reports are inadmissible. *See, e.g.*, *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1237 (W.D. Wash. 2008); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210–11 (D. Nev. 2008) (citing various authorities and explaining that unsworn expert reports are not admissible to support or oppose summary judgment). But, a court may consider evidence that "could be presented in an admissible form at trial." *Fraser v.*

*Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003). As Plaintiffs could present Dr. Veronikis' expert report in an admissible form if accompanied by a sworn declaration, the Court will consider the contents of his report for the purposes of summary judgment.

Dr. Veronikis opines that Mrs. Rodman's TVT-O implant "has continued to contract, shrink, and degrade *in vivo*, causing chronic inflammation and nerve entrapment, muscle spasm resulting in the chronic pain she is currently experiencing" and that "[s]afer alternative products and surgical procedures to treat [Mrs. Rodman's] SUI were available at the time of Mrs. Rodman's implant." Dkt. 51-2 at 18. While Dr. Veronikis discusses the injuries Mrs. Rodman suffers from because of her TVT-O implant, his report does not connect any of her injuries to specific design defects. He does state that "safer alternative designs would have significantly reduced the risk of the injuries suffered by Mrs. Rodman," but he does not offer an opinion on any of the TVT-O's design defects.

Plaintiffs' evidence as to causation of their design defect claim is similar to the evidence considered in *Abt v. Ethicon, Inc.*, No. 1:20-cv-0047 SRC, 2020 WL 4887022, at *3–4 (E.D. Mo. Aug. 20, 2020). In *Abt*, the plaintiff's case-specific expert opined that the defective mesh was the cause of the plaintiff's symptoms and complications, but he did not connect a specific design defect with her injuries. *Id.* at *3. The district court concluded that "at most Abt has established correlation between the implant's design defects and her injuries; she has not shown causation. Without some evidence showing her implant caused her injuries, beyond conclusory statements, Abt's claim for strict liability design defect fails." *Id.* at *4.

Dr. Veronikis has not opined as to any of the TVT-O's design defects or whether any such defects caused Mrs. Rodman's injuries. His expert report does not establish that "the defect 'more probably than not' caused [Mrs. Rodman's] injuries." *Bruns*, 77 Wn. App. at 215. As such, Plaintiffs have not created a genuine issue of material fact as to causation. The Eastern District of Washington has also reached this conclusion. *See Lynch v. Ethicon, Inc.*, 2020 WL 5733184, at *2 (E.D. Wash. Sept. 24, 2020.) ("But without an expert opinion asserting a causal link between the general *design defects* identified by Dr. Veronikis and Lynch's injuries, Lynch has not established a genuine issue of material fact." (emphasis in original)).

Summary judgment is therefore GRANTED as to Plaintiffs' Strict Liability – Design Defect claim, and that claim is dismissed with prejudice.

**D. Fraud-Based Claims**

Plaintiffs' remaining fraud-based claims are for Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), and Constructive Fraud (Count VIII). Defendants argue that these claims fail because Plaintiffs cannot establish a false statement of material fact upon which Mrs. Rodman relied and because there was no special relationship between Defendants and Mrs. Rodman to give rise to a duty to disclose. Dkt. 46 at 19–20.

Washington has adopted the nine common law elements of fraud, and, at its core, a fraud claim requires a false representation of material fact. *See Stiley v. Block*, 130 Wn.2d 486, 505 (1996) (listing the nine elements). Defendants argue that Mrs. Rodman cannot identify any specific statement made by them that was communicated to her. Dkt.

46 at 19. Plaintiffs retort that they "materially relied on the graudulent statemetns Defendants deliberately made" but do not cite to any specific evidence in the record or specific statements made to Mrs. Rodman. Dkt. 51 at 17. Rather, Plaintiffs focus their arguments on the representations made to Dr. Ludwiczak through the IFU. Plaintiffs have not put forth any evidence that Defendants made any misrepresentations of material fact to them *specifically* or that Mrs. Rodman actually relied on any statement made by Defendants. Absent that essential evidence, summary judgment is GRANTED as to Plaintiffs' Common Law Fraud claim, and the claim is dismissed with prejudice.

Plaintiffs' final fraud claims are for Fraudulent Concealment (Count VII) and Constructive Fraud (Count VIII). Both claims require a "special relationship" between the parties that gives rise to a duty to disclose. *See Giraud v. Quincy Farm & Chem*¸102 Wn. App. 443, 452 (2000) (fraudulent concealment); *Green v. McAllister*, 103 Wn. App. 452, 467–68 (2000), *superseded by statute on other grounds*, RCW 25.05.250(2), *as recognized in McLelland v. Paxton*, 11 Wn. App. 2d 181, 221–22 (2019) (constructive fraud). Whether a duty to disclose exists is a question of law. *Colonial Imps., Inc. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 731 (1993). Defendants argue that, as a matter of law, no special relationship or duty to disclose exists between a medical device manufacturer and a patient. Indeed, Washington law establishes that "a manufacturer has a duty to warn the medical profession and not the user of its risks." *Terhune*, 90 Wn.2d at 18. Plaintiffs do not respond to this argument nor cite to or provide case law to the contrary. The Court therefore concludes, as a matter of law, that Defendants did not owe a duty of disclosure

to Mrs. Rodman. Summary judgment is GRANTED as to Plaintiffs' Fraudulent Concealment and Constructive Fraud claims, and the claims are dismissed with prejudice.

**E. Remaining Claims**

Plaintiffs' remaining substantive claim is for Mr. Rodman's loss of consortium. Loss of consortium is typically thought of as a "loss of society, affection, assistance and conjugal fellowship, and . . . loss or impairment of sexual relations" in the marital relationship. *Ueland v. Pengo Hydra-Pull Corp.*, 103 Wn.2d 131, 132 n.1 (1984) (citing *Black's Law Dictionary* 280 (5th ed. 1979)). In Washington, a loss of consortium claim is a separate and independent claim rather than a derivative claim. *Green v. A.P.C. (Am. Pharm. Co.)*, 136 Wn.2d 87, 101 (1998). But, no claim for loss of consortium will arise if no tort is committed against the impaired spouse. *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 853 (1986). Because Mrs. Rodman's underlying tort claims have been dismissed with prejudice, Mr. Rodman's loss of consortium claim necessarily fails as well. Summary judgment is therefore GRANTED as to Plaintiffs' loss of consortium claim, and the claim is dismissed with prejudice.

Plaintiffs' final two claims are for Punitive Damages (Count XVII) and Discovery Rule and Tolling (Count XVIII). Defendants did not move for summary judgment for these final, procedurally-based claims. However, because Plaintiffs' substantive claims have been dismissed, their claim for punitive damages is moot. *See Hofschneider v. City of Vancouver*, 182 F. Supp. 3d 1145, 1155 (W.D. Wash. 2016). Their punitive damages claim is DISMISSED with prejudice. Similarly, their claim for "Discovery Rule and

Tolling" cannot stand absent a substantive claim and is therefore DISMISSED with prejudice.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment, Dkt. 45, is **GRANTED**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 15th day of June, 2021.

BENJAMIN H. SETTLE
United States District Judge